IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BEVERLY RODRIGUEZ,

      Plaintiff,

v.                                            15cv681 WPL/LF

JEFFREY SMITH,

      Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Plaintiff Beverly Rodriguez filed a Motion to Amend Complaint seeking to add a claim for malicious prosecution. (Doc. 52.) Defendant Jeffrey Smith filed a Response (Doc. 53), and Rodriguez filed a Reply (Doc. 62). Having read and considered the briefing, case record, and relevant law, I grant Rodriguez's motion.

### BACKGROUND

I note that this brief background section is not a final determination of the facts for resolution of Smith's pending motion for summary judgment based on qualified immunity (Doc. 28) or any subsequent motion filed by either party.

In August 2012, Smith, a detective with the New Mexico State Police, filed a criminal complaint charging Rodriguez with third-degree felony larceny for stealing two used metal ramps from the Cuba Independent School District, where Rodriguez was employed as an Operations Director. (*See* Doc. 28-6; Rodriguez Dep. 2:11-3:16 (Doc. 37-8 at 1).) Smith obtained an arrest warrant and search warrant, arrested Rodriguez, and seized the ramps from her front yard. (*See* Docs. 28-1, 28-2, 28-4, 28-5; *see also* Smith Aff. at ¶¶ 18-31 (Doc. 29 at 5-7).)

On January 10, 2013, Smith testified before a grand jury (*see* Doc. 1 at 8), which did not issue an indictment (*see* Smith Aff. at ¶ 34 (Doc. 29 at 7)).

Rodriguez filed suit on August 5, 2015, alleging that Smith violated her Fourth and Fourteenth Amendment rights. (*See* Doc. 1.) Her complaint alleges that Smith omitted material facts and made false statements in the warrant affidavits to arrest and imprison her in order to induce her cooperation in a bus contractor fraud investigation involving her uncle. (*See* Doc. 1 at 6-7, 8-12.) Rodriguez now seeks to amend her complaint to add a claim for malicious prosecution. (*See* Doc. 52; *see also* Doc. 52-1 at 12-20.)

## DISCUSSION

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed.R.Civ.P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014) (expressly incorporating the Rule 16(b)(4) good cause requirement imposed by district courts in the Tenth Circuit and five other circuits.)

Rule 16(b)(4) instructs that "[a] schedule may be modified only for good cause and with the judge's consent." The good cause standard "requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Gorsuch*, 771 F.3d at 1240 (alteration and quotation omitted). Examples of good cause include "if a plaintiff learns new information through discovery or if the underlying law has changed." *Id.* Despite the discovery of new information, however, the court may still deny a motion to amend if the party "knew of the underlying conduct but simply failed to raise [its] claims." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015) (quoting *Gorsuch*, 771 F.3d at 1240) (finding no abuse of discretion in district court's affirmance of magistrate judge's order denying motion to amend for

lack of good cause when party filed motion eleven months after the amendment deadline and four months after learning new information in discovery that gave rise to the additional claim).

Rule 15(a)(2), in turn, instructs courts to "freely give leave [to amend] when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

Here, Rodriguez filed her Motion to Amend on May 31, 2016, which was seven months after the October 30, 2015, amendment deadline set in Judge Fashing's scheduling order (*see* Doc. 20 at 2), so Rodriguez must satisfy both the Rule 16(b)(4) and Rule 15(a) standards.

### ANALYSIS

I. Rule 16(b)(4)

Rodriguez's Motion to Amend includes correspondences with state officials to demonstrate that she first attempted to obtain the grand jury transcript via a New Mexico Inspection of Public Records Act ("IPRA") request in "October of 2014",[1] which predates this lawsuit. (Doc. 62 at 2.) She argues that she diligently pursued the transcript in the intervening time and adds that "[t]he malicious prosecution claim was not ripe until Plaintiff obtained the transcript of Defendant Smith's grand jury testimony" on May 10, 2016, which was three weeks before she filed her Motion to Amend. (Doc. 52 at 3-4.)

After reviewing the chronology, I find that Rodriguez demonstrated good cause, primarily because the information on which she bases her malicious prosecution claim would have been timely disclosed during discovery had the District Attorney not attempted to quash her

---

[1] Rodriguez includes a response letter from the Thirteenth Judicial District Attorney's Office acknowledging that Rodriguez sent an IPRA request (*see* Doc. 52-2 at 1), but Rodriguez does not specify when she sent the IPRA request that prompted the response.

subpoena. That is, after attempting to obtain the grand jury records in October 2014 and submitting numerous follow-up requests (*see* Docs. 52-2, 52-3, 52-5, 52-7), Rodriguez issued a federal subpoena to the Thirteenth Judicial District Chief Clerk on February 26, 2016 (*see* Doc. 52-8), which was two months before the close of discovery on April 29, 2016 (*see* Doc. 20 at 2). Though the grand jury records should have been destroyed under NMSA § 31-6-8 (1978) after an indictment was not returned, the records nonetheless existed when the subpoena issued, and the information contained in the records constitutes "new information learned through discovery"—a circumstance that *Gorsuch* explicitly provides as an example of good cause. *Gorsuch*, 771 F.3d at 1240.

In addition, Rodriguez filed her Motion to Amend less than one month after receiving the new information, so the prohibition in *Gorsuch* and *Birch* against a party waiting too long to file a motion to amend after obtaining new information does not apply. Specifically, Rodriguez "received a copy of the grand jury CD on May 4, 201[6]" (Doc. 62 at 4), attended a settlement conference with Judge Fashing on May 23, 2016 (*see* Doc. 50), and then, after not reaching a settlement, filed her Motion to Amend one week later, on May 31, 2016 (*see* Doc. 52). This one month time frame is much shorter than in *Birch*, where the party waited four months to file the motion to amend without citing an intervening event, like a settlement conference. *See Birch*, 812 F.3d at 1248 ("Appellants offer no explanation in their appeal briefs for why they waited four months to file their motion to amend."). Here, Rodriguez discovered new information in discovery and was diligent in filing her motion to amend based on that new information.

Smith raises a number of counterarguments. First, he appears to question the legitimacy of Rodriguez's IPRA requests to undercut Rodriguez's claims of diligence. He argues that the delayed or non-existent responses contravene the requirement in IPRA that governmental entities

acknowledge receipt of a request within fifteen days and reveal that Rodriguez's first legitimate request was made via the subpoena on February 26, 2016. (*See* Doc. 53 at 4-5.)

The attachments to Rodriguez's Motion to Amend, however, refute this argument and demonstrate that Rodriguez attempted to obtain the grand jury testimony in 2014, before filing the federal lawsuit. For instance, the response letter from the Thirteenth Judicial District Attorney's Office dated October 3, 2014, explicitly mentions an IPRA request. (*See* Doc. 52-2 at 1 ("I will consider that this IPRA request has been fulfilled").)

Second, Smith argues that I should deny leave to amend because the proposed amendment is not based on new information. He cites *Pallottino v. City of Rio Rancho*, 31 F.3d 1023 (10th Cir. 1994), for the proposition that "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial," *id.* at 1027 (quotation omitted). (Doc. 53 at 6.) Smith summarizes that "[a]ll of the allegations included in the proposed malicious prosecution claim were known to Plaintiff before she received the information from the district attorney" because "she had already filed a complaint asserting malicious abuse of process in state court before she filed her federal case," and "the elements are the same." (*Id.*)

Rodriguez concedes that the elements of the state and federal claims "are similar" but argues that her federal claim is "more detailed," more focused on the grand jury testimony, and subject to the heightened federal plausibility pleading standard under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), rather than the notice pleading standard in state court. (Doc. 62 at 9-10.)

I find Rodriguez's arguments persuasive because the overall progression of the case supports her argument: she attempted to obtain the grand jury testimony before filing her federal

lawsuit and waited to assert the malicious prosecution claim until she possessed sufficient facts to meet the heightened federal pleading standard.

Having found that Rodriguez demonstrated good cause under Rule 16(b)(4), I apply the Rule 15(a) standard, as interpreted in *Frank*.

**II.     Rule 15(a)**

Smith's Response raises three grounds for denying the Motion to Amend under Rule 15(a): undue delay, undue prejudice, and futility. I address each individually.

### A.     Undue Delay

Smith does not state whether the section in his Response titled "Plaintiff's Request for the Grand Jury Records Accounted for the Delay in Their Receipt" applies to the Rule 16(b)(4) or Rule 15(a) analysis, or both. (*See* Doc. 53 at 5.) In any event, I have found that Rodriguez was diligent in both seeking the grand jury transcript and filing her Motion to Amend, so a finding of undue delay is not warranted.

### B.     Undue Prejudice

Smith argues that the Motion to Amend came "as a surprise" because "[t]he pre-trial deadlines for moving to amend, completion of discovery, and filing of dispositive motions have passed." (Doc. 53 at 8.) Smith adds that he will incur additional expense to "withdraw his Motion for Summary Judgment, conduct additional discovery, and file another Motion for Summary Judgment." (*Id.*; *see also id.* at 6.)

Smith fails to demonstrate undue prejudice. I find his first argument about surprise to be slightly exaggerated. Though Smith filed his motion for summary judgment based on qualified immunity on February 4, 2016 (*see* Doc. 28)—two months before the April 29, 2016 close of discovery (*see* Doc. 20 at 2)—he did not file a contemporaneous motion to stay, which left open

the possibility that Rodriguez would continue discovery and seek to add another claim based on newly obtained information. Rodriguez did just that: she filed her subpoena on February 26, 2016, and presumably would have sought leave to amend within the discovery period had she timely received the subpoenaed information. I am giving Rodriguez the benefit of the doubt because she sought the grand jury transcript for over two years via letters, a subpoena, and motion practice, so it seems likely that she would have filed the motion to amend as soon as possible. As for Smith's second argument—that the expense of filing a new or supplemental dispositive motion is prejudicial—Smith cites no case to support the idea that additional expense prejudices the merits or outcome of a party's case.

    C.    Futility

Smith argues that permitting the amendment would be futile because he "will assert he is entitled to qualified immunity on the malicious prosecution claim," and "[t]here is no evidence in the record to support that [he] acted with other than a legitimate motive in conducting his investigation." (Doc. 53 at 7-8.)

Smith's arguments are unpersuasive because he fails to allege specific insufficiencies in the proposed malicious prosecution claim that warrant dismissal. *See Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997) ("A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment.") Rather than delve into the nine pages that allege malicious prosecution in the First Amended Complaint, Smith focuses on the consequences of granting the amendment—he will file a dispositive motion—and raises the general argument that he is entitled to summary judgment because the record is devoid of evidence to substantiate the new claim. (*See* Doc. 53 at 7-8.)

In addition to Smith's inability to show futility, a review of Rodriguez's malicious prosecution claim in her First Amended Complaint reveals a plausible claim for relief.

## CONCLUSION

After applying the two-part *Gorsuch* test, I find that Rodriguez has demonstrated good cause under Rule 16(b)(4) to amend her complaint, and none of the justifications to deny leave to amend listed in *Frank* suggest otherwise.

Rodriguez's Motion to Amend (Doc. 52) is granted. Rodriguez is directed to file her First Amended Complaint for Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution, as attached to her Motion to Amend (*see* Doc. 52-1), separately on the docket by July 28, 2016.

IT IS SO ORDERED.

					William P. Lynch
					United States Magistrate Judge